Mr. Kerr, I see you have two minutes reserved for rebuttal, you can begin whenever you are ready. Yes, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Roma Javed, and I represent the petitioner, Kadeem Kamar Kerr. Mr. Kerr is a lawful permanent resident who was ordered removed exclusively because his misdemeanor New York child endangerment conviction was held to constitute a crime of child abuse under the Immigration and Nationality Act. In Matthews, this Court affirmed the agency's determination for a categorical match, in part because the petitioner could not point to a case with a confirmed endangerment conviction falling below child abuse. Doesn't Matthews bind on the question of whether the categorical approach is appropriate for this set of statutes? We believe that Matthews is not controlling here, Your Honor. Matthews held as it did because the petitioner could not demonstrate that the state convicts for overbroad conduct. It controls on the issue of whether or not it's a categorical match. We can't revisit that. What you're suggesting is that you could still satisfy the realistic possibility exception based upon your client's own case. Yes, absolutely. On the issue of whether or not it's a categorical match is in response to Judge Nathan's question. It definitely binds us on that, right? Your Honor, Mr. Kerr's conviction is the missing case that fills the gap that Matthews identified. Matthews held as it did because the petitioner could not demonstrate that the state convicts for overbroad conduct. Specifically, there was no evidence of a guilty plea for overbroad conduct within the administrative record. We have that case here demonstrated through Mr. Kerr's conviction. Any version of the facts presented at Mr. Kerr's trial, even in the light least favorable to Mr. Kerr, demonstrate that he was convicted of conduct that falls below the generic offense of child abuse. The jury instruction was proper in terms of laying out elements consistent with the INA provision. Fair to say? Correct, Your Honor. We take no issue with the jury instructions in the case. Mr. Kerr was convicted of child endangerment based on the presence of loaded and unloaded firearms, marijuana, cash, and ammunition in the same apartment as his one-month-old half-sister, Mayanna. Mr. Kerr's conduct, while far short of praiseworthy, likely is not dissimilar from that of many New Yorkers who own firearms, often loaded, and marijuana in homes that they share with their children. We have not found any New York State case law to indicate that the mere possession or presence of loaded firearms or marijuana were both in the same home as a child as child abuse. Well, if it's on a dresser, I know your client contested this, but most favorable to the prosecution, it was in an open, a bedroom with an open door, and the loaded firearms, at least some of them, were on the dresser along with the marijuana. Just focusing on the firearms, you had loaded firearms on a dresser according to the government's proof. Isn't that consistent with the jury instruction in terms of it creates a risk of harm to the child? Your Honor, whether the door was locked or unlocked, Mr. Kerr was convicted based solely on the possession of those firearms loaded in his room as well as the marijuana. And we posit that that did not constitute a sufficiently high risk of harm to his one-month-old half-sister such that he should have been held to have been convicted of child abuse warranting removal. There was no evidence of other unlawful activity in the apartment beyond the possessions of the marijuana and the firearms. Mr. Kerr was acquitted of all counts related to the intent to use the firearms unlawfully. There were no charges related to drug trafficking or other unlawful activity actually occurring in the home. Why can't a jury give an instruction that if there's likely to be injury, physical, mental, or welfare of a child, if someone's keeping loaded firearms on a dresser in a bedroom, that wouldn't qualify? I'm having a hard time understanding that. Your Honor, at no level here has anyone clearly articulated a theory of harm to Maiana that was realistically probable given the facts at the time of Mr. Kerr's conviction. Why? There were other children who were in and out of that house. They could easily have picked up a loaded firearm and shot the infant child accidentally with a loaded firearm. Why isn't that? In fact, I look back at the prosecution's summation in the state case, and that's exactly what they said. It was two kids. So why isn't that? Your Honor, the record is clear that any other minors were out of state at summer camp during the time of the conviction. The only people, because the jury is not permitted to speculate, we must look at the indictment and view the facts as the jury was required to view them, considering the circumstances on or about August 15th, 2013. So just focusing on that, you have an infant child in an apartment with a room contained, an unlocked room, facts most favorable to the government based on the testimony of the police officers, with the ability to access loaded firearms. I'm not seeing the argument why that isn't sufficient to meet the jury instruction, which you agree is consistent with the INA provision. Your Honor, the respondent posits this hypothetical that someone could have accessed the firearms and accidentally hurt Mayanna Kerr. I think it's uncontested that she was one month old and could not have accessed those firearms or the marijuana herself to pose that direct danger. But the hypotheticals that the government poses, they're not impossible, but they are far-fetched. Because the other minors were out of the home at that time, we must look at the circumstances as they were at that time. How about an adult? An adult can pick up the gun and accidentally discharge it. I don't think it's limited to children. Having a gun out on a dresser in a home with children, I think a jury could easily find. I thought you were making a different argument. There are cases that say if it's locked in a closet, nobody else can get access to it, that then potentially you could have a situation where the jury couldn't rationally find that someone could get access to it and accidentally act on it. But that's obviously not the government's version. Your argument is basically trying to take what is supposed to be a categorical analysis and have in each case some type of additional hearing, I think, in immigration court, where you have another trial to try to decide what happened. The case where you would have the own conviction potentially fitting into this exception would be if the jury was instructed different than what the law says. They were told, you don't have to worry about risk. And they were told something else, then you potentially have an exception. But the jury instruction was fine here, and there was certainly evidence to support that. So wouldn't you be suggesting there would have to be an additional hearing every time, an additional trial in the immigration court? I see I'm out of time, Your Honor. Is it okay if I respond? No, you have a minute left, but I'm sorry for wasting your time with one question. No, that's okay, Your Honor. Your Honor, Mr. Kerr here doesn't challenge the sufficiency of his conduct as New York child endangerment. The child endangerment statute covers these gray areas where a child may be at some risk of danger, such that they can meet the standard for the misdemeanor child endangerment, which rarely carries prison time, and the New York juries reasonably interpret that term widely. But it does not clear the bar for a sufficiently high risk of harm required for federal child abuse. The minute risk of one of the immediate family members going into Mr. Kerr's bedroom, accidentally shooting or harming Mayanna with Mr. Kerr's gun may have been enough to convict him of the child endangerment, but it does not rise to the sufficiently high risk of harm required for federal child abuse. Now, it's your argument, to the extent that the analytical framework is. Matthew Bynes on the question of categorical match. But you found a case, this case, in which there's a reasonable probability that the New York statute would be applied more broadly than the federal provision. It's your burden to establish reasonable probability, is that right? Yes, Your Honor. And so how do you, and you meet that here how? Through the submission of Mr. Kerr's full jury trial transcript. We're considering all the facts in the least favorable light to Mr. Kerr. So even accepting the police officer's testimony, not accepting Ms. Forrest's testimony, accepting the police officer's testimony that that door was open, they could see the loaded weapons during their search of the broader apartment. So accepting all that, you say it's still met because of the age of the child and they can't ambulate, and therefore, they can't access the weapons themselves. Nor could they be accidentally harmed as a result of maintaining a number of loaded weapons in conjunction with a substantial quantity of drugs. That's the argument. That's our argument, Your Honor. Yes, it is. So Mr. Kerr's conviction- So if there was a cache of weapons on the kitchen table, if it's an infant, there's no potential harm? Is that your argument? That is our- Drugs all over the table that New York State can't prosecute for endangering a child if it happens to be an infant in that apartment? Absent any facts illustrating a risk to the child, Your Honor, we don't think that just possession of firearms or marijuana suffices to constitute child abuse, such that it should warrant someone's removal from the United States and possible permanent separation from their own two children. So Mr. Kerr's case is the missing case that the Matthews Court did not have the benefit of. Based on Mr. Kerr's case now, this court can hold this child endangerment statute facially not to be a categorical match overbroad, and we ask that this court do so. Should the court disagree, however, Mr. Kerr's case still exceeds the scope of the BIA's current definition of child abuse, and remand is still required for the board to explain how Mr. Kerr's case fits within that definition. All right, thank you. Thank you, Your Honor. We have another two minutes in rebuttal, and we'll now hear from the government. Is it pronounced Zady? Zady, yes, Your Honor. Go ahead, Mr. Zady. Good morning, Your Honor, and may it please the court. Imran Zady for the Attorney General. At the outset, this appeal faces a steep uphill climb, because this court in Matthews already held that New York child endangerment assesses a sufficient risk of harm to a child, is a categorical crime of child abuse. So is there no set of facts at this point, Counsel? That without the court, Korean Bank could look at the specific evidence that was presented to the jury and conclude that, in fact, the state of the law now, as opposed to what existed at the time Matthews decided, demonstrates that there's not a categorical match? That's correct, Judge Nathan. If I'm understanding your question, under any version of the facts here, and there is obviously a discrepancy about the locked door, but under any version of the facts, you are looking at I mean, just a preposterous hypothetical charge for child endangerment because they found a toy gun in the apartment. And the same jury charge given convicted of child endangerment under New York law. And they come and they say, see, whatever was the state of the law at the time of Matthews, we know now that it's not a categorical match because we've got this example of a case which goes beyond, which allows conviction under state law, which goes beyond what is required under the law of the INA. Yes, I'm sorry. I was understanding your question before. It's any version of the facts here in this case. So when you say the toy gun example. This case or any case, yes. No, we acknowledge that the realistic probability test would allow if you found a case that actually had, say, the toy gun. Matthews doesn't control their argument here. Matthews made the point that there was no argument there that their own case- Correct. That was based on state case law and not the- So that issue continues to remain open for years to come. Someone could come in on any day and say, look, even though it's a categorical match on paper, here's what New York State is doing in some other cases or in my case, right? Theoretically, yes, Your Honor. And I recognize, and this is what I started saying at the beginning, is Matthews controls here. And this is why there's a steep uphill climb. Matthews has already interpreted the elements of this New York statute, child endangerment offense, which requires a likelihood of harm, a likelihood of harm in injury to the mental, moral and physical welfare of a child. Judge Nathan and Judge Bianco, you both asked about the jury instruction. There's no question that that is what the jury was instructed here. So petition themselves, we don't understand to be arguing that the elements were misread to the jury here. You just have a jury finding that this case involved facts that establish that likelihood of harm to a child. So this court sitting in this case is up against that backdrop. Now- Just going back to Judge Nathan's hypothetical, because I like it, is even if it's properly instructed- Right. If the facts are so clear that it could possibly satisfy this definition- Correct. We could still address it and say something's going wrong in the state, right? Yes. Toy gun case, we would say that's a problem. Even if the jury got the right instruction and convicted them for that reason, right? That's correct, Your Honor. So under De Leon's alvarez, you can show realistic probability either through case law or through your own case. So if somebody did come and say, toy gun example, something else that's just ludicrous and could not possibly amount to an actual risk of likely harm to a child, then yes, you would need to show, again against the backdrop of Matthews, that this case was some clear departure in law. And I submit, Judge Nathan, that your hypothetical may have been that case. But you would still need to show that that standard as applied in that case marked some type of clear departure in state law that does obviously fall somewhat short of what the statute expressly requires. There are some state cases, New York State cases, where the weapon was locked, stowed away, and the convictions were reversed. If this case were in that category, that could be problematic, right? It depends on the particulars. I like the toy gun example myself, because it is much more far-fetched. But if you're just talking about a locked weapon- I thought they were making an argument in their papers that I didn't hear today, because they were taking the government's version. But I thought they were making an argument in their papers that it could be the jury convicted on his version. We don't know what the jury was in their mind. And because he said it was locked, that creates an issue that the immigration courts have to resolve. And they don't. And they don't, Your Honor. To be very clear, if I can leave this panel with no other conclusions other than that Matthews binds generally, then there needs to be a marked departure here in this case from that. The second biggest conclusion I'd like to leave this panel with is that there is absolutely no precedent for that assertion, which is that you can satisfy the realistic probability test by showing- and this is page one of Petitioner's reply brief- that it is realistically probable that the jury accepted the defense witness's version of a case. There's no precedent for that. I mean, they've moved away from that. It seems like they've moved away from that, Your Honor, because there's no precedent for that position. The realistic probability test is based on the actual facts in which a state has applied its criminal laws. And so here you would have any of the state court decisions that reflect any of the facts of the case, or you have some of the documents that Petitioner has submitted here, and we don't dispute that you can use some of the transcripts and proceedings to show what shared set of facts establish what happened here. And so at its core, this case would come down to do you believe that it's impossible or fall so far short of a likelihood of harm where you have undisputedly three weapons, two of which were loaded, 143 rounds of ammunition, and 46 bags of marijuana packaged for sale? I take it the primary contention is, taking all the circumstances, you've got a nonambulatory one-month-old. So it's-I'm just stating the argument. It's sort of like the guns are behind a lock or a locked door, because that means the child can't access it, and the facts here mean the child can't access it. So what's your response to that? The response to that, Judge Nathan, is the only harm is not a baby crawling to the weapon and discharging it or crawling to the marijuana and smoking it. It's everything else that could happen in an apartment where you have people walking around, including other children, who could walk into that room and fire the weapon or do something with the marijuana. So they're not-the other children aren't there the day that the indictment charged the conduct, right? Correct. So how does that come into play? I mean, you didn't prove at trial that there were guns and drugs there other days, I gather. Right, but as I understood the risk of likelihood of risk of harm, that part is a forward-looking inquiry. So at that time on that day, you didn't have other children in the house, but you have a house that has three weapons, two are loaded, all of the ammunition, all of the marijuana, and then the ostensible victim here would be the one-month-old child. So risk of likely harm is a forward-looking inquiry. In a situation like that, could, in the future, somebody else come in, and this is a stash house, so somebody else who's coming to buy drugs come in, do something that would incite violence and harm the child, is how we would understand that likelihood of harm. It's not in that exact moment was the child going to crawl to it or was somebody else going to fire the weapon at the child. And that's how we understand that element to apply. Supposing it was two months before and the child was, in fact, not yet born. What would the result be? I'm sorry, Judge Sack, if it is two months before and the child was not yet born? Is that what you're saying? Yes. There was no information. It was two months. This all happens two months previously. There was no... There was no information. It was a minus-one-month-old child. I submit that that would probably be much too attenuated to represent a likelihood of risk of harm to that child. So we have the one-month-old child living in the house at the time, and I think... Forward-looking, but not too forward-looking. Right. I think you need some kind of a connection there, and I don't think we're anywhere... I think we're well within that connection here. But this is specific to your question, Judge Nathan, about whether at that moment you need to rely on the fact that there are no other kids in the house. I think, by nature, a likelihood of harm question and inquiry has some forward-looking aspect to it. Again, one of... But you framed that this is a stash house. But was that proved at trial, or is it just on this day? It wasn't, of course, an element of the case, but it was very clearly the prosecution's theory of the case, that you have drugs and weapons go hand-in-hand because you're protecting the nature of the investment. They're stashing what clearly seems to be a stash house with 46 bags of marijuana packaged for sale and 10 plants found in the backyard. So it was a theory of the prosecution's case. But again, yes, you don't have a sort of verdict sheet that shows the jury finding, this is what we accept, this is what we accept, this is what we accept, beyond, obviously, the elements of the statute. So realistic probability test, the way Petitioner has invoked it here and now seems to retreat from in this argument, is clearly not how that test is meant to be applied. And then again, and I think it's important to emphasize this, even accepting every piece of the version of the case that Petitioner even submits, which is a locked door, no knowledge from the family members in the house, you're talking about keeping three weapons, two of which are loaded, 143 rounds of ammunition, and 46 bags of marijuana packaged for sale in an apartment with a one-month-old baby. To say that that is a marked departure from creating a likely risk of harm to a child or a minor is simply not, we think, very persuasive. If there are no other questions, Your Honor, I'm going to ask that the Court deny this petition. All right, thank you. Thank you. Ms. Chabot, you have two minutes in rebuttal. I just do want, just to make sure, because I thought in your papers you were arguing that somehow your client's version of the location of the gun had to be considered for immigration purposes. You are conceding that we should analyze it only in the light most favorable to the government's evidence during the trial? Are you conceding that? Well, we don't forego the arguments in our brief that this case should be viewed through the defense witness's testimony, but we posit that it doesn't matter, quite frankly, that you can look at the facts through the indictment that day, and under any lens, his conduct was not child abuse. But if you're not forfeiting that argument, that argument would require another hearing by an immigration judge. That was the point I was making earlier, right? If you're saying you have to consider his version, then in every immigration proceeding where there's a conviction, where the defendant said, I didn't commit the murder, I was just there, the immigration judge would have to have a retrial and decide who's telling the truth? I'm not sure how that would play out, Your Honour, at the agency level. You're a gifted advocate. You still have two minutes left. Okay, on rebuttal, Your Honours, I have three brief points to make. The first I would like to clarify based on Judge Nathan's earlier question to me. The jury instructions were sufficient for child endangerment. They were not sufficient for child abuse. Mr. Kerr does not challenge his conviction as child endangerment. His facts sustain the child endangerment conviction after New York, and his conviction is typical. So what would a jury charge look like that would meet child abuse under the INA provision? Something that would indicate instructions to attach a high level of risk to the conduct. The jury was instructed, acted in a manner likely to be injurious to the physical, mental, and moral welfare of the infant child. Yes. Which I think, again, this goes, does Matthews bind on that question? I think that's consistent with Matthews holding as to the elemental match. Am I missing something there? No, Your Honour. Our argument is that New York interprets the likely to endanger in a broader manner than the board's 2016 Mendoza-Osorio definition of child abuse, which requires the sufficiently high risk of harm. That's our argument. Second, Your Honour, the board held Mr. Kerr's conduct to be child abuse without explaining how his conduct, which is lesser than that of the cases they have approvingly cited as constituting child abuse, falls within the same category. The cases that they approvingly cited were the defendant Hitchcock's conduct in Hitchcock, where he had 23 firearms in his home, loaded, and he taught a 14-year-old to use the gun. Locked, right? They were maintained in Hitchcock, weren't they? Maintained behind locked? Defendant Hitchcock's, I believe, were... In a stereo, in a bundle wrapped in a, hidden inside a stereo. That was defendant Duenas' conduct, Your Honour, which the board said did not constitute child abuse. Okay. And, yes, he kept his... Defendant Duenas, who was held to not have been... Not to have facts that sustain a child endangerment conviction, he kept his firearm loaded, concealed, and operable as well. Although, yes, it was hidden. Similarly, the presence of marijuana around children has never been held to be a crime of child endangerment or abuse absent any indication that it was used around the children or that they were upset or knew of it or affected by the presence of it. But that, right, but that reminded me of the state case that reached that conclusion. Gray Low, I believe it was. Right. So that was about personal use level quantities of marijuana in the home, if I understand it right. So we've got at least two distinguishing factors in those cases. We've got not hidden, not locked firearms, multiple firearms, and we have distribution, arguably distribution quantity levels of drugs. So, and we have those things in combination. And I think the question then is, could a jury reasonably conclude that that meets a high likelihood of risk, right? That's the question. Yes, that is the question, Your Honor. And I would submit that at no level, even during my opposing counsel's argument, has anyone been able to articulate a realistic theory of harm to Mayanna that was probable at the time of Mr. Kerr's arrest. And the agency itself partakes in gymnastics to justify his conviction as child abuse. The IJ relies on possible prospective harm, saying that one day the child will ambulate. At the BIA, the board doesn't even address the age of the minor, which is an absolutely critical inquiry in the child abuse analysis. And then finally, a respondent articulated a number of hypotheticals, including a stash house or that someone walking by the room would accidentally shoot Mayanna. We submit, Your Honor, that there's been no realistic theory of a sufficiently high likelihood of harm to Mayanna here, such that Mr. Kerr should be removed for child abuse. And as such, this court should hold the statute facially overbroad or alternatively remand to the Board of Immigration Appeals so that they can analyze Mr. Kerr's facts and explain how they comport with the agency's current definition of child abuse. All right, thank you. Thank you both. We're going to reserve decision and have a good day. Thank you. We'll now hear United States v. Torres. We have Ms. Baumgartel for Mr. Torres. I see you reserved your two minutes for rebuttal, so you can begin whenever you're ready. Good morning. May it please the Court. Sarah Baumgartel of the Federal Defenders on behalf of Aquilino Torres. This court should order a new trial on Mr. Torres' kidnapping convictions because his defense of those charges was prejudiced by the district court's erroneous admission of inflammatory and improper 404B evidence, including the testimony of one of Mr. Torres' prior girlfriends about injuries in an incident that occurred seven years earlier, 200-some pages of her medical records, and a transcript of Mr. Torres' prior guilty plea that included a variety of inflammatory and prejudicial information that had no proper purpose in this trial. The district court had two purposes. One was the knowledge of your client as to whether or not he was knowingly detaining the victim. The other was as to the state of mind of the victim. So why isn't it important if your client is contesting knowledge? I didn't know, and especially where there were times where he left the apartment, right, and went on errands, right? So why isn't it important for the government then to be able to say, well, he did something before where he pled guilty to knowingly detaining someone that was very similar to this? So he very well understood how this would be interpreted by the victim in this case. Why isn't that important on knowledge? So Mr. Torres did not previously plead guilty to knowingly detaining someone in connection with- What was the guilty plea to? To assault. To assault. He admitted only that he had assaulted Ms. Rosario. Did she testify, right? Did the prior victim testify? She testified at his current 2020 trial, but she did not testify in the prior trial. In the prior trial, it was a plea. Right, but aside from conviction, that goes to the knowledge. The argument is that it was the effect of his conduct on Ms. Rosario shows his knowledge that the effect of similar conduct here would have on the victim in this case. The current charge is a kidnapping charge. With respect to Ms. Rosario, her allegations were that Mr. Torres physically bound her in a room, taped her mouth shut, and barricaded the door shut so that no one could come in. I submit, to the extent that shows knowledge of the kidnapping, it is extremely different than Ms. Nett's allegations. And that's an important difference and a reason why this-